Pamela BABICH and Nicholas Babich, Plaintiffs-Appellants,

v.

WAUKESHA MEMORIAL HOSPITAL, INC., Wisconsin Health Care Liability Insurance Plan and Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 95–2516. Submitted on briefs October 10, 1996.—Decided October 30, 1996.*

(Also reported in 556 N.W.2d 144.)

700

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Richard G. Kalkhoff* of *Vlasak, Britton & Konkel, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lori Gendelman* and *Jeffrey J.P. Conta* of *Otjen, Van Ert, Stangle, Lieb and Weir, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   While Pamela Babich was a patient at Waukesha Memorial Hospital, Inc., she was stuck with a hypodermic needle that was mistakenly left in her bed linens. Babich allegedly became scared that she had been infected with the HIV virus and claims that this emotional distress had a significant impact on her life. Although later testing confirmed that Babich

701

was not infected, she and her husband brought suit against Waukesha Memorial seeking compensation for their emotional injuries. The trial court, however, applying the guidelines established in *Bowen v. Lumbermens Mut. Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994), and case law from other jurisdictions, determined that the Babiches' claims failed as a matter of public policy. We affirm the trial court's analysis and its order dismissing the Babiches' claims.[1]

This case requires us to independently gauge whether the trial court properly awarded summary judgment to Waukesha Memorial. We will therefore begin our analysis by presenting the facts in a light most favorable to Babich and her husband. *See generally Preloznik v. City of Madison*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580, 582-83 (Ct. App. 1983).

Pamela was admitted to Waukesha Memorial on October 28, 1991, because of an asthma attack. She went to her assigned room, changed into a hospital gown and got into bed. As she pulled the covers up, she was "poked" in her buttock. When she reached to see what happened, she felt that she had been stuck with a syringe that had been left in the bed. She also felt blood near the entry wound. The physical injury was minor and only left a small scab, which lasted for about one week.

The next day, Pamela discussed the incident with her physician. She specifically inquired if the needle was contaminated with HIV and of the risk that she might become infected.

---

[1] We certified the issues raised in this appeal to the supreme court. *See* RULE 809.61, STATS. The supreme court, however, declined to take the case.

Pamela submitted to an HIV test about six months later, and, at the advice of her physician, took two other tests at six-month intervals. All tests were negative, and after eighteen months her physician assured her that there was little likelihood that she was ever going to test positive.

Still, during those eighteen months, Pamela feared that she was going to contract AIDS. She was afraid to touch her children and refused to have unprotected sex with her husband. Her fears were based on the knowledge she gathered from the public media. Pamela concedes, however, that she did not have specific knowledge that this needle had been in contact with any HIV-positive patient or that the hospital was even treating a person who was HIV-positive.

In October 1994, three years after Pamela received the needlestick injury, she and her husband filed their claim against the hospital. Pamela sought damages for her emotional injuries and her related medical expenses.[2] Her husband sought compensation for the loss of her companionship.

After limited discovery, Waukesha Memorial (and its insurers) responded with a motion to dismiss the claims. Waukesha Memorial argued that Pamela's fears were unreasonable and unsupported. The hospital also argued that the Babiches' claim should be dismissed on grounds of public policy.

The trial court agreed with Waukesha Memorial. Although the trial court could not identify a similar published Wisconsin case, after comparing the Babiches' claims to decisions from other jurisdictions,

---

[2] The Babiches' complaint also states that Pamela "suffered severe and permanent injuries of body." However, she does not raise any argument pertaining to this issue in her briefs to this court and we therefore deem it waived.

it determined that their claims failed as a matter of public policy. It specifically cited three of the six concerns voiced in the *Bowen* decision. *See Bowen*, 183 Wis. 2d at 655, 517 N.W.2d at 443-44.

We begin our analysis by reviewing the case law regarding claims for emotional distress arising out of needlestick injuries. These cases generally share the following factual similarities. The plaintiff is accidentally and unexpectedly wounded by a needle. Although later tests prove negative, during the interim period before testing provides a dispositive result, the plaintiffs fear that they have been infected with the HIV virus or some other serious blood-borne illness. *See* Brian R. Garves, *Fear of Aids*, 3 J. PHARMACY & L. 29, 41-44 (1994) (discussing examples).

We observe that courts analyzing such claims have applied two different tests. One line of authority—the authority that the Babiches urge us to adopt—permits the court to consider all of the circumstances surrounding the needlestick and gauge the "overall reasonableness" of the plaintiff's fears.

An example of such analysis is *Castro v. New York Life Ins. Co.*, 588 N.Y.S.2d 695 (N.Y. Sup. Ct. 1991). There, an office building maintenance worker sought compensation for her emotional distress after she was stabbed by a used hypodermic needle which was left in a garbage can. *Id.* Although the building management argued that her claim was completely speculative because she had no evidence that she had been infected or that the needle was contaminated, in light of the overwhelming public attention given to the risks of blood-borne illnesses, the *Castro* court held that there was "a basis to guarantee the genuineness of her claim" and permitted it to go forward. *Id.* at 698; *see also K.A. C. v. Benson*, 527 N.W.2d 553, 560 n.9 (Minn. 1995)

(collecting related authority and explaining that *Castro* does not follow the general trend).

The other line of needlestick authority places a much stricter standard on the plaintiff and requires that he or she present evidence that the needle came from a "contaminated source." As one would expect, Waukesha Memorial argues that we should follow this case law.

A good example of how this standard works is *Murphy v. Abbott Lab.*, 930 F. Supp. 1083 (E.D. Pa. 1996). The needlestick victim in *Murphy* was a registered nurse who was stuck in her hand after the safety mechanism on an intravenous device failed. Because the patient was known to be positive for HIV and Hepatitis-B, the nurse feared that she would contract these diseases and brought suit against the manufacturer. *Id.* at 1084-85. When the district court could not identify any Pennsylvania law on point, it analyzed and applied the needlestick cases from other jurisdictions.

After reviewing these cases, the district court refused to dismiss this nurse's claim. It cited the evidence that the needle had been previously exposed to a contaminated source and reasoned that this evidence assured that the nurse's fears were genuine. Indeed, the *Murphy* court distinguished the nurse's claim from those of other plaintiffs who had not shown that the needle they were stuck with had been so exposed. *See id.* at 1087.[3]

---

[3] The decision which the district court distinguished was *Burk v. Sage Prods., Inc.*, 747 F. Supp. 285 (E.D. Pa. 1990). In *Burk*, a paramedic suffered a needlestick injury because of an allegedly faulty disposal device. While he claimed that there had been several AIDS patients on the same hospital floor, the court dismissed his claim reasoning that he had not provided

Our review of the pertinent case law reveals two methods of gauging emotional distress claims arising out of needlestick injuries. Our task, therefore, is to determine which standard, "overall reasonableness" or "proof of contaminated source," best accords with the relevant public policy guideposts set out in *Bowen,* which apply whenever a court faces a suit premised on emotional injuries. We must determine which of these two tests will best ensure that future needlestick victims receive compensation for their emotional injuries without opening our courts to claims that are so speculative that they would otherwise "shock the conscience of society." *See Bowen,* 183 Wis. 2d at 656, 517 N.W.2d at 444.

With regard to the *Bowen* public policy analysis, we first note our agreement with the trial court which identified the three following concerns with the Babiches' claims. First, the trial court believed that their injuries were out of proportion to Waukesha Memorial's alleged culpability. Next, the trial court concluded that permitting the Babiches to proceed would place an unreasonable burden on other potential defendants. Finally, the court cited concerns that the Babiches' claims would open the door to a field with no sensible or just stopping point. *See id.* at 655, 517 N.W.2d at 444.

We conclude that the "proof of contaminated source" standard is most appropriate in light of the above public policy concerns. Requiring a needlestick victim to offer proof that the needle came from a contaminated source strikes a proper balance between ensuring that victims are compensated for their

sufficient proof that the injuring needle had come from a contaminated source. *Id.* at 288.

emotional injuries and that potential defendants take reasonable steps to avoid such injuries, but nonetheless protects the courts from becoming burdened with frivolous suits. We reach this conclusion by following the analysis and guideposts laid out in *Bowen*, 183 Wis. 2d at 655, 517 N.W.2d at 443-44.

First, we agree with the trial court that the Babiches' injuries were out of proportion to Waukesha Memorial's potential culpability. While at first glance Waukesha Memorial's failure to uncover a syringe within fresh hospital linens seems like an extremely reckless act, the real risk that contact with a random used needle would infect a person with the HIV virus is minimal. *See Herbert v. Regents of the Univ. of Cal.*, 31 Cal. Rptr. 2d 709, 711 (Cal. Ct. App. 1994) (estimating the risk at less than one percent).[4] Thus, even if Waukesha Memorial was "careless" in its handling of such needles, it was not recklessly disregarding its patients' safety because such needles do not pose a significant health risk.

Second, we share the trial court's concern that allowing this claim to move forward would place an unreasonable burden on future defendants. As we just explained, there is little actual risk that a needlestick

---

[4] A recent study of needlestick and related injuries of health care workers in Wisconsin hospitals estimated that 0.7% of all their injuries involved patients who were HIV-positive. Sarah J. Lulloff et al., *The incidence of needlestick and sharps injuries and use of safer devices in Wisconsin hospitals*, WIS. MED. J., June 1996, at 379, 380. The Wisconsin report, however, estimated the risk that a person would actually test HIV-positive after contact with a contaminated instrument at only 0.36%. *Id.* at 379.

will pass an infection along to the victim. Of course, if we were to impose liability on hospitals and other potential defendants for such accidents, they would instigate precautions to prevent such injuries if only to avoid legal liability. Nonetheless, such precautions would be a waste of precious health care resources because those extra dollars spent on preventing needlestick injuries would not efficiently improve overall patient safety. Moreover, we are concerned that health care providers would take the otherwise unnecessary step of segregating HIV/AIDS patients or possibly refusing to treat patients in their efforts to avoid legal liability.

Finally, permitting the Babiches to pursue their claim would correspondingly expose the courts to more "fear of AIDS" or "AIDS phobia" claims. *See* Garves, 3 J. PHARMACY & L. at 50-51; *see also Marriott v. Sedco Forex Int'l Resources, Ltd.*, 827 F. Supp. 59, 75 (D. Mass. 1993). Taking the Babiches' evidence in its best light, they can only prove that Pamela's skin was punctured by an errant needle and that she was in a hospital. While we do not dispute that such an event could cause a layperson unfamiliar with the scientific data to reasonably fear that he or she was going to contract AIDS, we cannot identify any other way to segregate a needlestick injury from some other event which could also create a reasonable, but scientifically unfounded, fear. Moreover, needlestick-related "fear of AIDS" cases could spread beyond the health care service industry. Waukesha Memorial has identified, for example, a case brought against a retailer because a shopper was injured by a needle left in a coat by another customer. *See Macy's Cal., Inc. v. Superior Court*, 48 Cal. Rptr. 2d 496 (Cal. Ct. App. 1995). The

"proof of contaminated source" standard thus provides a useful tool with which Wisconsin courts can "draw the line between recoverable and non-recoverable claims" in a variety of contexts. *Cf. Bowen*, 183 Wis. 2d at 658, 517 N.W.2d at 445.

■

In sum, the Babiches' claims fail as a matter of public policy because Pamela has no proof that the needle which injured her came from a contaminated source. We believe that public policy requires plaintiffs seeking compensation for their emotional distress arising out of needlestick injuries (and related puncture wounds) to prove that the device which wounded them came from a contaminated source. Such evidence provides a bright line with which a trial court may test whether the claim constitutes an unwarranted expansion of tort liability on the defendant or would otherwise shock the conscience of society and, hence, be contrary to the public policy of this state.

*By the Court.*—Order affirmed.