Faye MEYER, on her own behalf and
on behalf of all others similarly situated
in the State of Wisconsin,
Plaintiff-Appellant,†

v.

The LASER VISION INSTITUTE, LLC,
d/b/a The Lasik Vision Institute,
a Florida Corporation,
Defendant-Respondent.

Court of Appeals

*No. 2005AP1233. Submitted on briefs January 6, 2006.
—Decided March 1, 2006.*

2006 WI App 70

(Also reported in 714 N.W.2d 223.)

† Petition to review dismissed 5-3-06.

764

768

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Mark A. Peterson* and *M. Susan Maloney* of *McNally, Maloney & Peterson, S.C.*, Milwaukee, and *John A. Yanchunis* and *Jill H. Bowman* of *James, Hoyer, Newcomer & Smiljanich, P.A.*, Tampa, Florida.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Christopher C. Mohrman* of *Michael Best & Friedrich LLP*, Milwaukee.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J.   Faye Meyer, on her own behalf and on behalf of all others similarly situated in the state of Wisconsin, appeals from an order dismissing the complaint against The Laser Vision Institute, LLC, d/b/a The Lasik Vision Institute, a Florida corporation (LVI). In her complaint, Meyer alleged that LVI's newspaper advertisement purporting to offer the Lasik procedure for $299 per eye and a free consultation with a patient counselor contained untrue, deceptive or misleading statements of fact in violation of Wis. Stat. § 100.18(1) (2003–04),[1] and was a plan or scheme, the

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

purpose of which was not to sell the procedure at the advertised price, contrary to § 100.18(9). Meyer also raised claims of unjust enrichment and money had and received. Because Meyer cannot prevail on any of these claims, even if the facts as alleged in the complaint and the reasonable inferences drawn from those facts are taken as true, we affirm the order granting LVI's motion to dismiss Meyer's complaint.[2]

## STANDARD OF REVIEW

¶ 2.    The scope of our review drives our analysis in this case. We therefore begin with a consideration of the appropriate standard of review.

¶ 3.    The issue before this court is whether Meyer's complaint states a claim upon which relief can be granted. A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). The facts set forth in the complaint must be taken as true and the complaint dismissed only if it appears certain that no relief can be granted under any set of facts the plaintiffs might prove in support of their allegations. *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 923, 471 N.W.2d 179 (1991). The reviewing court must construe the facts set forth in the complaint and all reasonable inferences that may be drawn from those facts in favor of stating a claim. *Id.* at 923–24. Whether a complaint

---

[2] This is a class-action lawsuit. However, in this appeal, we are concerned solely with whether Meyer, the representative of the class, has stated a claim upon which relief can be granted.

states a claim for relief is a question of law which this court reviews de novo. *Id.* at 923.

## COMPLAINT

¶ 4. On December 15, 2004, Meyer filed an amended complaint against LVI alleging that around November 2003 she saw LVI's advertisement in the *Sheboygan Press* newspaper. The advertisement offered the Lasik procedure for $299 per eye and a free consultation. Meyer called the toll-free telephone number and scheduled her free consultation. Meyer met with a patient counselor. The counselor was a commissioned sales representative with no medical background. The counselor was not licensed under WIS. STAT. ch. 448. The counselor advised Meyer that she could not have the advertised rate of $299 per eye. The counselor sold Meyer the Lasik procedure for $2600 for both eyes and additional products for approximately $200. Meyer paid a nonrefundable deposit.

¶ 5. According to the complaint, all of this information was conveyed to Meyer prior to her "examination by any doctor." Meyer was not permitted to see a doctor until after she agreed to the procedure and made the nonrefundable down payment. Dr. Ivan Ireland performed her procedure in early January 2005. At that time, LVI charged Meyer for the balance of the cost of the procedure.

¶ 6. Based upon these allegations, Meyer prayed for relief under WIS. STAT. § 100.18(1) and (9) and the equitable doctrines of unjust enrichment and money had and received. We first assess the legal sufficiency of the claims based upon each of the statutory violations in turn and then combine our examination of the legal sufficiency of the claims based upon unjust enrichment and money had and received.

¶ 7. Meyer's complaint alleged that the advertisement in the *Sheboygan Press* newspaper was untrue, deceptive or misleading in violation of Wis. Stat. § 100.18(1).[3] Two elements form the basis for a § 100.18(1) violation: There must be an advertisement or announcement, and such advertisement must contain a statement that is "untrue, deceptive or misleading." *State v. American TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 300, 430 N.W.2d 709 (1988).

¶ 8. Meyer correctly observes that an advertisement can violate Wis. Stat. § 100.18(1) without making

---

[3] Wisconsin Stat. § 100.18(1) provides:

(1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

"untrue" statements as long as those statements can be properly characterized as deceptive or misleading. Citing cases from other jurisdictions, Meyer points out that implied representations in an advertisement may also render it deceptive or misleading. *See FTC v. Wilcox*, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995). Meyer argues that two statements in LVI's advertisement were expressly or impliedly deceptive or misleading.

¶ 9.  Meyer first contends that the advertisement's claim that a customer will get a free consultation with a counselor was deceptive or misleading. According to Meyer, this is because the term "counselor" suggests a licensed medical professional qualified to give medical advice and, unbeknownst to her, the counselor was actually a commissioned sales representative with an incentive to sell the highest-priced procedures.

■

¶ 10.  We are not persuaded that the advertisement's promise of a free consultation with a counselor was misleading or deceptive. First, Meyer's complaint does not allege that the advertisement describes the role of the counselor. Meyer's complaint does not contend that the advertisement states that the counselor is a licensed medical professional or that the counselor is not a commissioned sales representative.

¶ 11.  Further, the fact that the counselor is a commissioned sales representative who has an incentive to sell higher priced procedures and additional products also does not render the statements deceptive or misleading. In *American TV*, our supreme court discussed the relationship between profit motives and WIS. STAT. § 100.18. *See American TV*, 146 Wis. 2d at 304. Although *American TV* was a "puffery" case in a retail store context, the principles the court articulated concerning that relationship apply with equal force to

other § 100.18(1) and (9) claims involving commissioned sales representatives.

¶ 12.   There, American TV & Appliance of Madison, Inc., ran a radio advertisement stating that it was having a "clearance" and "closeout" sale on the "finest" and "best" washers and dryers and that these appliances would be available for only $499. *American TV*, 146 Wis. 2d at 295–96. The state cried foul and filed a complaint alleging violations of WIS. STAT. § 100.18(1) and (9). *American TV*, 146 Wis. 2d at 297–98. The complaint alleged that there were incentives for American salespersons that worked on commission to try to sell more expensive washer and dryer models and that, in fact, American stocked and sold more of those models. *Id.* at 295, 304. Our supreme court concluded that the profit motive of the salespersons did not so easily transfer into a cause of action under § 100.18(9):  "All profit motivated retailers recognize these incentives and hope to sell their more profitable items, if possible. Section [100.18(9)(a)], cannot be interpreted to make unlawful such an incentive." *American TV*, 146 Wis. 2d at 304. This principle applies to § 100.18(1) claims as well. Applying the principle to the matter at hand, we conclude that the fact that the LVI counselors were commissioned sales representatives who had a motive to sell the higher-priced procedures does not, without more, translate into a viable § 100.18(1) claim.

■

¶ 13.   Meyer next alleges that the advertisement's claim that Lasik was available for $299 per eye was deceptive and misleading because that low-cost procedure was not generally available. However, the fact that not every consumer responding to the advertisement would qualify for the low-cost procedure does not mean that LVI violated WIS. STAT. § 100.18(1). Meyer failed to

allege in her complaint that the low-cost procedure is unavailable to those who want it and qualify for it. Meyer also failed to allege that she qualified for the low-cost procedure and LVI wrongfully refused to perform it. She did not claim that the counselor disparaged the low-cost procedure to her;[4] rather, she claimed only that the counselor informed her that she "could not have" the low-cost procedure and sold her a more expensive procedure and additional products.

■

¶ 14.   Meyer suggests that the question of whether LVI's advertisement was deceptive or misleading cannot be resolved on a motion to dismiss and should have been sent to the fact finder. *See, e.g., Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 445–46, 597 N.W.2d 462 (Ct. App. 1999). However, that question need only be sent to the trier of fact where there are facts alleged or reasonable inferences that can be drawn from those facts that could form the basis for a WIS. STAT. § 100.18 claim. *See Dorr*, 228 Wis. 2d at 445–46. Here, even if all of the allegations pled and the reasonable inferences drawn are taken as true, it is quite clear that Meyer cannot prevail under § 100.18(1).

*WIS. STAT. § 100.18(9)*

■

¶ 15.   In her complaint, Meyer alleged that the advertisement was part of an elaborate bait-and-switch

---

[4] In her complaint, Meyer alleged that the commissioned sales representatives, or counselors, informed customers as a class prior to an examination by a doctor that they could not have the low-cost procedure and/or that such procedure was outmoded, unsafe or inappropriate for their particular situations. However, she did not allege that this was also what she was told when she met with the LVI counselor.

775

scheme in violation of WIS. STAT. § 100.18(9).[5] There are three elements that must be alleged to state a claim under this provision. *American TV*, 146 Wis. 2d at 303. First, there must be an advertisement. *Id.* Second, there must be a plan or scheme of which the advertisement is a part. *Id.* Third, the purpose or effect of the plan must be to not sell the product as advertised. *Id.*

¶ 16. According to Meyer's complaint, the advertisement was part of a sophisticated plan or scheme, the purpose of which was to sell consumers the highest-priced Lasik procedure possible rather than the advertised low-cost procedure. The purpose of the advertisement, "the bait," was to lure customers into making an appointment for a free consultation with a patient counselor by offering the Lasik procedure for the low price of $299 per eye. "The switch," as Meyer alleged, occurred at the appointment. The counselor would inform the customers that they could not get the procedure at the advertised price, but that they could purchase the Lasik procedure at a higher cost. The counselor would then sell the customers the higher-cost

---

[5] WISCONSIN STAT. § 100.18(9) provides in part:

(a) It is deemed deceptive advertising, within the meaning of this section, for any person or any agent or employee thereof to make, publish, disseminate, circulate or place before the public in this state in a newspaper or other publication or in the form of book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label or over any radio or television station or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment or to the terms or conditions thereof which advertisement, announcement, statement or representation is part of a plan or scheme the purpose or effect of which is not to sell, purchase, hire, use or lease the real estate, merchandise, securities, service or employment as advertised.

procedure and additional products and secure a nonrefundable deposit before the customer had the opportunity to speak with a doctor. Meyer's complaint states that as a result of this plan or scheme, "few, if any, LVI customers . . . pay only the advertised price."

¶ 17. Here, again, the principles driving the *American TV* court's holding assist us. We quote *American TV* at length:

> Missing from the complaint are allegations tending to prove that, apart from any purpose not to sell the merchandise as advertised, there was a plan or scheme to carry out such a purpose. The state's complaint is more conspicuous by what it does not allege than by what it does allege. It does not allege that the $499 sets were not available to customers. It does not allege that the $499 sets were not sold to customers. To the contrary, it acknowledges four sets *were* sold. It does not allege that the sets displayed were defective. It does not allege that salespersons discouraged any actual customers from buying the $499 model and then switched them to more expensive models. The complaint does not allege any improper overt act.
>
> The complaint does not allege anything except that there were incentives for American to try to sell the more expensive models and that, in fact, it stocked and sold more of those models. All profit motivated retailers recognize these incentives and hope to sell their more profitable items, if possible. Section 100.18(9)(a), Stats., cannot be interpreted to make unlawful such an incentive. The statute requires a plan or scheme which is not demonstrated in this complaint.

*American TV*, 146 Wis. 2d at 303–04.

¶ 18. Like the State's complaint in *American TV*, Meyer's complaint is more conspicuous by what facts it does not allege than by what facts it does allege. While

Meyer's complaint is replete with legal conclusions concerning LVI's alleged bait-and-switch scheme, absent from Meyer's complaint are factual allegations tending to prove that, apart from any purpose not to sell the Lasik procedure for $299, there was a plan or scheme to carry out such a purpose.

¶ 19. Again, the complaint fails to allege that the low-cost procedure was not made available to consumers who qualified for the procedure and who wanted it. Specifically, it fails to allege that Meyer qualified for the low-cost procedure and was wrongfully denied it. The complaint does not allege that the counselor disparaged the low-cost procedure to Meyer in an effort to discourage her from purchasing it and then switched to the higher-cost procedure. Thus, as in *American TV*, the complaint does not allege any improper overt act.

¶ 20. The complaint merely alleges that a commissioned salesperson informed her that she "could not have" the low-cost procedure and sold her a higher-priced procedure and additional products. However, the use of commissioned sales representatives is not determinative evidence of a bait-and-switch plan or scheme. *Id.* at 308. Given these circumstances, we hold that the allegations in Meyer's complaint, like the complaint in *American TV*, are insufficient to form the basis for a WIS. STAT. § 100.18(9) claim.

### Unjust Enrichment and Money Had and Received

¶ 21. Finally, Meyer alleged claims of unjust enrichment and money had and received. These two claims are mirror images of each other. *See City of Milwaukee v. Knox*, 221 Wis. 335, 340, 266 N.W. 911 (1936) (holding that an action for money had and received is governed by equitable principles and is

778

based upon the fact of unjust enrichment; the opposing party must be unjustly enriched by money to which the first party must be legally and equitably entitled). We therefore collapse Meyer's claims under these two theories into a single discussion.

¶ 22.  Meyer's complaint pled facts which demonstrate that the parties entered into a contract when the counselor sold her the higher-cost Lasik procedure and additional products and she put forth the money for the nonrefundable down payment. Meyer's equitable claims are barred by this contract. *See Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d 653, 671–72, 553 N.W.2d 257 (Ct. App. 1996) (doctrine of unjust enrichment does not apply where parties have entered into a contract); *Wrede v. Exchange Bank of Gibbon*, 531 N.W.2d 523, 530 (Neb. 1995) (where rights of parties to money or property are governed by a valid contract, an action for money had and received does not lie). Meyer makes several attempts to get out from under this general rule.

¶ 23.  Meyer contends that even if she did enter into a contract with LVI, that contract violated Wis. Stat. § 448.30 and was void. *See Felland v. Sauey*, 2001 WI App 257, ¶ 14, 248 Wis. 2d 963, 637 N.W.2d 403 (noting that while the general rule is that contracts made in violation of a statute will not be enforced, not all contracts made in violation of a statute are void). According to Meyer, because the contract is void, it does not bar her equitable claims. *See Arjay Inv. Co. v. Kohlmetz*, 9 Wis. 2d 535, 538, 101 N.W.2d 700 (1960) ("Under the theory of unjust enrichment it is immaterial whether the defendant and the plaintiff entered into a void contract.").

779

¶ 24. WISCONSIN STAT. § 448.30 requires a physician who treats a patient to inform the patient about the availability of all alternate, viable medical modes of treatment and about the benefits and risks of these treatments. From this, Meyer reasons that it is improper for an unlicensed commissioned sales representative to sell the Lasik services, products and procedures to customers and to require a nonrefundable down payment prior to their meeting with a doctor.

¶ 25. We reject Meyer's contention that her complaint pled facts showing a violation of WIS. STAT. § 448.30. Even if a counselor sold Meyer the higher-cost procedure and Meyer had to secure the procedure with a nonrefundable down payment, the bottom line is that Meyer failed to allege in her complaint that Dr. Ireland, the doctor who performed her procedure, did not comply with § 448.30. Meyer did not allege that Dr. Ireland did not conduct an examination of her before performing the procedure, did not inform her of the risks and benefits of the procedure and did not discuss alternate treatment. Finding no statutory violation, we hold that the contract is valid and enforceable, thereby barring her equitable claims.[6]

---

[6] Meyer asserts that the trial court erred in concluding that even if the original contract was void or voidable because Meyer did not see a doctor until after she paid the nonrefundable down payment, Meyer later made or affirmed that unlawful agreement by her actions. Meyer submits that the trial court had to go beyond the pleadings to find that Meyer had made or affirmed the original unenforceable agreement when she met with the doctor, proceeded to have the procedure and paid the higher price. However, because we conclude that the original contract was not void or voidable, we need not address this argument.

¶ 26.  Meyer further relies upon the "total business relationship" exception to the general rule that the existence of a contractual relationship will bar an equitable claim. This exception applies where the contract fails to address the essential elements of the parties' "total business relationship." *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 425, 321 N.W.2d 293 (1982). This exception, however, does not apply where the contract covers the aspects relevant to the plaintiff's equitable claim. *See Northern Crossarm Co. v. Chemical Specialties, Inc.*, 318 F. Supp. 2d 752, 766 (W.D. Wis. 2004), *reconsideration denied*, 320 F. Supp. 2d 808 (W.D. Wis. 2004). In other words, "Wisconsin law does not bar a party from seeking equitable relief for a benefit conferred, *if* that benefit falls outside the scope of the parties' contractual relationship." *Id.* (citation omitted).

¶ 27.  Here, the facts pled in the complaint clearly show that the contract contemplated the benefit conferred (monetary compensation for the higher-cost procedure and additional products). Contrary to Meyer's assertions, we need go no further than the pleadings to reach this conclusion. The complaint expressly acknowledges that the counselor sold Meyer the higher-cost procedure and additional products, Meyer received the procedure and paid LVI the amount requested. Thus, the "total business relationship" exception does not apply.

¶ 28.  Meyer next maintains that her equitable claims and her Wis. Stat. § 100.18 claims are allowed because Wis. Stat. § 802.02(5) permits inconsistent pleadings in the alternative. However, the fundamental problem here is not merely inconsistent claims. As we

781

have explained, Meyer's equitable claims are premised on the parties' contractual relationship. Equitable claims based on a contract are not permitted. *See Greenlee*, 202 Wis. 2d at 671–72; *Wrede*, 531 N.W.2d at 530.

## CONCLUSION

¶ 29.   Meyer's complaint fails to state a claim upon which relief can be granted. Meyer failed to allege facts showing that the advertisement she saw in the *Sheboygan Press* newspaper for the $299 Lasik procedure was deceptive or misleading in violation of WIS. STAT. § 100.18(1) or that the advertisement was part of a bait-and-switch scheme to sell the procedure at a higher cost contrary to § 100.18(9). Further, the parties' contract bars Meyer's equitable claims. The trial court's order dismissing Meyer's complaint is affirmed.

*By the Court.*—Order affirmed.