Amber ALSTEEN and 69 others,
Plaintiffs-Appellants,†

Allen BETTS and 76 others, Plaintiffs,

STATE of Wisconin Department of Human and
Family Services, Marathon Cheese Corp.,
Wisconsin Physicians Service Insurance
Corporation and Marathon County,
Subrogated Parties,

v.

WAULECO, INC., a Wisconsin corporation and
Sentry Insurance, a mutual company,
Defendants-Respondents,

EMPLOYER INSURANCE COMPANY OF WAUSAU,
a Wisconsin Insurance company, Defendant.

Court of Appeals

*No. 2010AP1643. Submitted on Briefs May 24, 2011.
—Decided June 14, 2011.*

2011 WI App 105

(Also reported in 802 N.W.2d 212.)

† Petition for Review denied 12/1/2011.

On behalf of the plaintiffs-appellants, the cause was submitted on the joint briefs of *Thomas W. St. John, Ted A. Warpinski, Shannon A. Allen, Christopher M. Meuler* of *Friebert, Finerty & St. John, S.C.*, Milwaukee, and *Jerome P. Tlusty, Jessica J. Tlusty* of *Tlusty & Kennedy, S.C.*, Schofield.

On behalf of the defendants-respondents, the cause was submitted on the joint brief of *Thomas R. Schrimpf, Steven M. DeVougas* of *Hinshaw & Culbertson, LLP*, Milwaukee, and *Heidi L. Vogt, Philip C. Reid, Kelly J. Noyes* of *von Briesen & Roper, S.C.*, Milwaukee.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Amber Alsteen and sixty-nine others (collectively, Alsteen) appeal an order dismissing their personal injury claims against Wauleco, Inc., and

Sentry Insurance (collectively, Wauleco). Alsteen alleges that, while living in Wausau's River Street neighborhood, she was exposed to carcinogenic chemicals that Wauleco improperly released from the nearby Crestline window factory. Alsteen does not allege that she suffers any present health problems due to this exposure; however, she contends she is at an increased risk of developing cancer in the future. She therefore seeks damages for future medical monitoring expenses.

¶ 2. We conclude the circuit court properly dismissed Alsteen's claim. In Wisconsin, a plaintiff does not have a personal injury claim until he or she has suffered "actual" injury or damage. Increased risk of future harm is not an actual injury under Wisconsin law. Accordingly, we affirm dismissal of Alsteen's claim.[1]

## BACKGROUND

¶ 3. The following facts are alleged in the fourth amended complaint. From about 1940 to 1987, the Crestline window factory operated at 910 Cleveland Avenue, which is located in Wausau's River Street neighborhood. Wauleco, the current owner of the Crestline site, is the corporate successor to the Crestline Millwork Company and is a subsidiary of Sentry Insurance.

¶ 4. From approximately 1946 to 1986, operations at the Crestline site included treatment of wood products with a preservative called "Penta." Penta contains

[1] As an alternative basis for the circuit court's decision, Wauleco argues public policy bars Alsteen's claim. Because we conclude Alsteen failed to state a claim, we need not consider whether public policy precludes imposing liability. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

hazardous chemicals, including dioxins, pentachlorophenol, and benzene. These chemicals are known to be harmful to human health and are classified as possible carcinogens. They are capable of causing both cancerous and non-cancerous diseases when ingested, inhaled, or absorbed through the skin.

¶ 5. Over a forty-year period, Penta was routinely spilled and discharged into the environment at the Crestline site. The Penta migrated into the River Street neighborhood. As a result, the air, soil, surface water, and groundwater in the River Street neighborhood became contaminated with dangerous levels of hazardous chemicals. Current and former residents of the neighborhood have ingested, inhaled, and absorbed these chemicals.

¶ 6. In May 2008, six neighborhood residents sued Wauleco, alleging personal injury and property damage caused by the release of Penta from the Crestline site. By the time the fourth amended complaint was filed in November 2009, the lawsuit included over 140 plaintiffs, each of whom had lived in or visited the River Street neighborhood at various times since 1939. These plaintiffs fell into three groups. One group alleged their exposure to Penta had caused them to develop various health problems, including Hodgkin's lymphoma, non-Hodgkin's lymphoma, breast cancer, liver cancer, brain cancer, stomach cancer, thyroid cancer, diabetes, thyroid disease, and neurological problems. Another group alleged Wauleco's release of Penta had damaged their property. Alsteen is a member of the third group of plaintiffs, whose claims are the subject of this appeal. This third group did not allege any current adverse health effects caused by their exposure to Penta. Instead, they alleged their exposure to Penta "significantly increased their risk of contracting cancer" at

some point in the future. As damages, they sought "future expenses related to medical monitoring."

¶ 7. Wauleco moved to dismiss Alsteen's claims. Wauleco argued that Wisconsin law requires a plaintiff to allege actual injury in order to state a tort claim. Because Alsteen had only alleged an increased risk of future harm, Wauleco contended she had not alleged any actual injury. Accordingly, Wauleco argued Alsteen's medical monitoring claim was not recognized under Wisconsin law. The circuit court granted Wauleco's motion, concluding Alsteen had failed to state a claim. Alsteen now appeals.

## DISCUSSION

¶ 8. "A motion to dismiss a complaint for failure to state a claim tests the legal sufficiency of the complaint." *Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 305 (1987). This presents a question of law that we review independently. *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In so doing, we accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of stating a claim. *Meyer v. Laser Vision Inst., LLC*, 2006 WI App 70, ¶ 3, 290 Wis. 2d 764, 714 N.W.2d 223. "A complaint should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of [the] allegations." *Watts*, 137 Wis. 2d at 512.

¶ 9. Here, the circuit court properly dismissed Alsteen's claim because, even accepting the allegations in the fourth amended complaint as true, the complaint does not state a claim. We come to this conclusion for

three reasons. First, Wisconsin law requires actual injury before a plaintiff may recover in tort, and Alsteen has not alleged any actual injury. Second, we are persuaded by the United States Supreme Court's decision in *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997), which held that an asymptomatic railroad worker who had been exposed to asbestos could not recover medical monitoring expenses under the Federal Employees' Liability Act. Third, several other jurisdictions that have addressed the issue have articulated persuasive reasons for refusing to recognize medical monitoring claims in the absence of actual injury. We therefore affirm dismissal of Alsteen's claim.[2]

## I. Actual injury

¶ 10. "A tort claim is not capable of enforcement until both a negligent act and an accompanying injury have occurred." *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 554, 335 N.W.2d 578 (1983). In other words, a plaintiff cannot state a claim unless he or she has suffered "actual damage." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 17, 270 Wis. 2d 146, 677 N.W.2d 233. Alsteen has not alleged any actual injury or damage caused by Wauleco's release of Penta from the Crestline site. Consequently, she has failed to state a claim.

---

[2] If Alsteen ultimately develops a disease due to her exposure to Penta, she will then have a personal injury claim that may include reimbursement for medical examinations. Recognizing this fact, the circuit court dismissed Alsteen's medical monitoring claim without prejudice "to the extent [Alsteen] subsequently manifest[s] illness or injury allegedly related to [her] alleged exposure."

*Increased risk of cancer is not an actual injury.*

■

¶ 11. Alsteen alleges she has suffered an injury because her exposure to Penta "has significantly increased her risk of contracting cancer" in the future. However, she does not cite, and our research has not revealed, any Wisconsin case that awarded damages based solely on an increased risk of future harm without any present injury. Instead, Wisconsin law holds that the "mere possibility of future harm" does not constitute actual injury or damage. *See id.*

¶ 12. *Meracle v. Children's Service Society of Wisconsin,* 149 Wis. 2d 19, 437 N.W.2d 532 (1989), is instructive. The Meracles sued their adoption agency after their adoptive daughter, Erin, was diagnosed with Huntington's disease. *Id.* at 22–24. They claimed the agency misrepresented that Erin was not at risk of developing the disease, and they sought, among other things, recovery of her future medical expenses. *Id.* at 23–24. The circuit court dismissed the Meracles' claim on statute of limitations grounds, finding that they discovered the misrepresentation and, consequently, knew Erin was at risk more than three years before filing suit. *Id.* at 24–25. Our supreme court reversed, explaining that the Meracles did not have a claim until Erin actually developed the disease. *Id.* at 27–28. The court explained that, before Erin was diagnosed with Huntington's disease, the risk that she might develop the disease in the future "constitute[d] a 'mere possibility' and . . . was not an injury for which the Meracles could have recovered." *Id.* at 28. Similarly, Alsteen's risk of developing cancer is, at present, a "mere possibility," and therefore is not an injury for which she can recover.

¶ 13. Alsteen cites *Brantner v. Jenson,* 121 Wis. 2d 658, 666, 360 N.W.2d 529 (1985), for the state-

ment, "Risk is a medical fact and may be used to establish a reasonable basis for compensable anxiety." However, *Brantner*, a case involving emotional distress damages, is not on point.[3] Brantner's back was injured in a car accident. He subsequently sued the other driver, and a jury awarded him damages for emotional distress related to a painful back surgery he might be required to undergo in the future. *Id.* at 660–61. Our supreme court determined Brantner could recover emotional distress damages related to the possible future surgery, reasoning:

> [Brantner] established, to a reasonable degree of medical probability, that the individual defendant's negligent conduct caused [him] permanent injury, that the injury converted a dormant condition into one causing pain, and that the pain might necessitate surgery, which [Brantner] reasonably believed . . . to involve a long recovery time and to itself involve extreme pain. . . . [T]he disclosure of the realistic possibility of back surgery as a natural consequence of the injuries under the facts of this case is sufficient to enable a jury to find to a reasonable certainty that [Brantner] has sustained, and will sustain, mental distress as a result of the defendant's negligent conduct.

*Id.* at 667–68. Thus, *Brantner* holds that, when a plaintiff suffers physical injury due to an accident, the jury may consider the risk of possible future surgery in assessing emotional distress damages. Nothing in *Brantner* stands for the proposition that increased risk of future harm, without any present injury, is sufficient to state a claim for damages.

---

[3] Alsteen concedes she has not asserted an emotional distress claim.

481

*Mere exposure to a dangerous substance is not an actual injury.*

¶ 14. In the alternative, Alsteen argues that mere exposure to Penta was an "affront to [her] bod[y]," and therefore constitutes an actual injury. She cites *Babich v. Waukesha Memorial Hospital, Inc.*, 205 Wis. 2d 698, 556 N.W.2d 144 (Ct. App. 1996), for the proposition that mere exposure to a contaminated source constitutes an injury under Wisconsin law. However, *Babich* is inapposite. There, a hospital patient sought damages for emotional distress after she was stuck with a hypodermic needle that was mistakenly left in her bed linens. *Id.* at 701–02. She alleged the needle stick caused her to fear that she had been infected with HIV, although subsequent testing revealed she was not infected. *Id.* at 702–03. We affirmed a summary judgment in favor of the hospital, holding that, to recover for fear of infection, a needle-stick victim must offer proof that the needle came from a contaminated source. *Id.* at 706–07.

¶ 15. Alsteen argues that, under *Babich*'s "contaminated source" rule, she has alleged an actual injury because she can offer proof that she was exposed to air, soil, and water contaminated with Penta. However, *Babich* does not stand for the proposition that mere exposure constitutes actual injury. The issue in *Babich* was not whether the plaintiff had alleged an actual injury—she was indisputably injured when the needle pierced her skin, and she also suffered emotional distress. Instead, the issue was whether public policy barred her emotional distress claim because her fear of HIV infection was unreasonable. *Id.* at 703–04, 707–09. In that context, we held that the plaintiff could only recover if she offered proof of exposure to a contaminated source. *Id.* at 706–07. We did not hold that mere

exposure to a contaminated source could satisfy the requirement of actual injury.

¶ 16. Moreover, we have already rejected the argument that *Babich*'s contaminated source rule applies in toxic tort cases. In *Dyer v. Blackhawk Leather, LLC*, 2008 WI App 128, ¶¶ 2–6, 313 Wis. 2d 803, 758 N.W.2d 167, a group of landowners sued several companies that had allegedly dumped vinyl chloride, a carcinogen, into a nearby landfill. The landowners sought compensation for their fear of developing cancer and argued that "their 'cancer-fear' claims [were] valid as a matter of law, because their groundwater constitute[d] a 'contaminated source' of water." *Id.*, ¶¶ 25–26. We rejected this contention, explaining:

> [T]he analysis in *Babich,* by its own terms, is specific to needlesticks and HIV. We reached the result in that case by considering the public policy factors for cutting off liability in negligence cases. Simply identifying an object in any given case and labeling it a "contaminated source" ignores these public-policy factors.

*Id.*, ¶ 26 (citation omitted).

¶ 17. Alsteen ignores the *Dyer* court's explanation of why the contaminated source rule does not apply in toxic tort cases. Instead, she focuses on a single statement from *Babich* that the contaminated source rule provides a useful tool "in a variety of contexts." *Babich*, 205 Wis. 2d at 709. However, the *Babich* court stated that the rule could apply "in a variety of contexts" while discussing a needle stick case that occurred in a retail store. *Id.* at 708–09. Thus, the court's "variety of contexts" statement referred to the fact that needle stick injuries can arise outside the health care context. The court did not suggest that the contaminated source rule could apply in non-needle stick cases.

¶ 18. As the *Dyer* court acknowledged, needle stick cases are fundamentally different from cases involving exposure to environmental contaminants. *See Dyer*, 313 Wis. 2d 803, ¶ 26. In a needle stick case, the plaintiff suffers an actual injury when the needle pierces his or her skin. In contrast, asymptomatic plaintiffs who are merely exposed to toxic chemicals do not suffer a corresponding physical injury. Additionally, while the instances in which an accidental needle stick may arise are relatively rare, most people are exposed to a wide variety of environmental contaminants, including carcinogens, on a daily basis. *See Buckley*, 521 U.S. at 442 ("[T]ens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring[.]"). Consequently, if mere exposure to a contaminated source were sufficient to state an actual injury in the toxic tort context, the number of potential claimants would be enormous. This consideration supports our conclusion that mere exposure to a dangerous substance does not constitute an actual injury.

*Medical monitoring is not an actual injury.*

¶ 19. Alsteen also argues she has suffered an actual injury because Wauleco's conduct has invaded her "interest in avoiding diagnostic examinations." In other words, Alsteen argues her "injury" is that she may have to undergo medical examinations in the future. However, she does not explain how this argument is consistent with Wisconsin law, which requires plaintiffs to prove present injury. *See Tietsworth*, 270 Wis. 2d 146, ¶ 17.

¶ 20. Moreover, as Wauleco notes, Alsteen's argument turns tort law on its head by using the remedy

484

sought—compensation for future medical monitoring—to define the alleged injury. She relies heavily on *Ayers v. Township of Jackson*, 525 A.2d 287, 310 (N.J. 1987), which reasoned that asymptomatic plaintiffs have a "legally protected interest" in avoiding medical examinations, and this interest can be injured by a defendant's negligent conduct. Yet, this explanation simply does not make sense, as it conflates the damages the plaintiffs seek with their alleged injury.

¶ 21. Unlike the *Ayers* court, other courts have rejected medical monitoring plaintiffs' attempts to conflate the concepts of injury and damages. For instance, the Michigan Supreme Court has explained:

> It is no answer to argue, as plaintiffs have, that the need to pay for medical monitoring is *itself* a present injury sufficient to sustain a cause of action for negligence. In so doing, plaintiffs attempt to blur the distinction between "injury" and "damages." While plaintiffs arguably demonstrate economic losses that would otherwise satisfy the "damages" element of a traditional tort claim, the fact remains that these economic losses are wholly derivative of a *possible, future* injury rather than an *actual, present* injury. A financial "injury" is simply not a present physical injury, and thus not cognizable under our tort system. Because plaintiffs have not alleged a present physical injury, but rather, "bare" damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable.

*Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 691 (Mich. 2005). Similarly, the Kentucky Supreme Court rejected the argument that medical monitoring itself is an injury, reasoning, "With no injury there can be no cause of action, and with no cause of action there can be no recovery. It is not the remedy that supports the cause of

action, but rather the cause of action that supports a remedy." *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 855 (Ky. 2002).

■■

¶ 22. *Henry* and *Wood* recognize that defining the need for medical monitoring as an "injury" does nothing more than attach a specific item of damages to what is actually a claim for increased risk of future harm. Yet, Wisconsin tort law does not compensate for increased risk of future harm; actual, present injury is required. *See Tietsworth,* 270 Wis. 2d 146, ¶ 17; *Meracle,* 149 Wis. 2d at 27–28. That Alsteen seeks medical monitoring damages, as opposed to some other measure of compensation, does not change this result.

*Wisconsin has not abandoned the actual injury requirement.*

¶ 23. Perhaps recognizing her inability to articulate a plausible injury, Alsteen cites *Bowen v. Lumbermens Mutual Casualty Co.,* 183 Wis. 2d 627, 517 N.W.2d 432 (1994), for the proposition that Wisconsin no longer requires actual injury to state a claim for damages. However, Alsteen's reliance on *Bowen* is misplaced. In *Bowen,* a mother sought damages for negligent infliction of emotional distress after witnessing the "violent and gruesome aftermath" of a car accident that killed her son. *Id.* at 634–35. Our supreme court reversed dismissal of the mother's claim. In so doing, the court eliminated the requirement that an emotional distress plaintiff prove a physical manifestation of emotional distress to recover damages. *Id.* at 653.

¶ 24. Importantly, though, the *Bowen* court did not eliminate the requirement that a plaintiff prove an actual injury to recover damages. Instead, the court recognized that, in an emotional distress case, a

plaintiff's severe emotional distress *is the actual injury,* and the plaintiff need not prove additional physical harm. *See id.* at 652–53 ("We conclude that the traditional elements of a tort action in negligence—negligent conduct, causation and *injury (here severe emotional distress)*—should serve as the framework for evaluating a bystander's claim of negligent infliction of emotional distress.") (emphasis added; footnote omitted).[4] Consequently, *Bowen* does not stand for the proposition that a tort plaintiff can state a claim for damages without alleging actual injury.

*This case is not analogous to Northridge Co. v. W.R. Grace and Co.*

¶ 25. Alsteen attempts to analogize her medical monitoring claim to the asbestos-related property damage claim in *Northridge Co. v. W.R. Grace and Co.,* 162 Wis. 2d 918, 471 N.W.2d 179 (1991). There, shopping mall owners sued the manufacturer of Monokote, a fireproofing material used in their building, alleging it was defective and dangerous because it contained asbestos. *Id.* at 922. The owners claimed "that the asbestos contaminated the building and they suffered damages by incurring expenses for inspection, testing and removal of the Monokote and by a diminished value of the property." *Id.* The circuit court dismissed the claim based on the economic loss doctrine, concluding that the complaint did not allege "damage to other property." *Id.* at 922–23. Our supreme court reversed, explaining:

> The essence of the plaintiffs' claim is that Monokote releases toxic substances in the environment thereby *causing damage to the building* and a health hazard to

---

[4] Again, Alsteen has not asserted an emotional distress claim, nor does she allege she has suffered severe emotional distress.

its occupants. *The plaintiffs claim that their property has been physically altered by the defendant's product,* whether or not such alteration is outwardly visible.

We conclude that the plaintiffs' allegation that the defendant's asbestos-containing product *physically harmed the plaintiffs' building* is the type of injury which is actionable under claims for relief in strict products liability and negligence. The principles and policies underlying strict products liability actions, namely, public safety and risk sharing, justify recognizing the tort claims.

*Id.* at 937 (emphasis added).

¶ 26. Alsteen argues that, if a property owner can recover for the presence of asbestos in a building, she should be able to recover for ingesting Penta. However, unlike Alsteen, the shopping mall owners in *Northridge* alleged the asbestos in their building actually damaged, physically altered, and harmed the building. *Id.* In contrast, Alsteen merely alleges that her exposure to Penta *might* cause her harm at some future time. As previously discussed, the possibility of future harm is not a cognizable injury under Wisconsin law. *See supra,* ¶¶ 11–13. Because Alsteen has not alleged any actual, present injury, the circuit court properly dismissed her claim.

## II. *Metro-North Commuter Railroad Co. v. Buckley*

¶ 27. The United States Supreme Court's reasoning in *Buckley,* 521 U.S. 424, also supports dismissal of Alsteen's claim. In *Buckley,* an asymptomatic railroad worker who had been extensively exposed to asbestos in the course of his employment attempted to recover for emotional distress and future medical monitoring expenses under the Federal Employees' Liability Act (FELA). *Id.* at 427–28. Addressing Buckley's medical

monitoring claim, the Supreme Court surveyed a variety of federal and state cases on medical monitoring and determined there was insufficient support in the common law for creation of "a new, full-blown, tort law cause of action" awarding lump-sum medical monitoring damages to asymptomatic plaintiffs. *Id.* at 440–41, 443–44.

¶ 28. The *Buckley* Court cited several policy factors in support of its conclusion. First, it recognized that medical monitoring claims present "special 'difficult[ies] for judges and juries' " who will be forced to identify which costs are "the *extra* monitoring costs, over and above those otherwise recommended[.]" *Id.* at 441 (citation omitted). This problem is compounded by "uncertainty among medical professionals about just which tests are most usefully administered and when." *Id.* Second, the Court expressed concern that permitting a medical monitoring claim without actual injury could lead to unlimited and unpredictable liability:

> Moreover, tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring. . . . And that fact, along with uncertainty as to the amount of liability, could threaten both a "flood" of less important cases (potentially absorbing resources better left available to those more seriously harmed) and the systemic harms that can accompany "unlimited and unpredictable liability" (for example, vast testing liability adversely affecting the allocation of scarce medical resources).

*Id.* at 442 (citations omitted). Third, the Court was concerned that allowing liability for medical monitoring would impose costs without corresponding benefits, due to the existence of alternative sources of payment and the possibility that plaintiffs would use their awards on something other than medical monitoring. *Id.* at 442–43.

¶ 29. Alsteen attempts to distinguish *Buckley* on three grounds. First, she argues that, because Buckley's claim arose under FELA, a federal statute, *Buckley* is not relevant in a case applying Wisconsin's common law. However, the Buckley Court surveyed state and federal decisions addressing medical monitoring claims under the common law and relied on common law principles to reach its holding. *Id.* at 440–41. Given that Wisconsin does not have any statutes or case law specifically addressing the availability of medical monitoring claims, *Buckley* and the common law principles it relied on are relevant to our analysis.

¶ 30. Second, Alsteen contends *Buckley* is inconsistent with Wisconsin law "because, unlike FELA, Wisconsin common law does not require a manifest physical injury for negligent infliction of emotional distress." In this respect, Alsteen misconstrues *Buckley*, failing to recognize that *Buckley* addressed two separate issues: emotional distress damages under FELA, and medical monitoring damages under FELA. In the first half of the opinion, the Court addressed and rejected Buckley's claim for emotional distress damages, concluding that exposure to a substance that might cause disease at a later time did not constitute the "physical impact" necessary to recover emotional distress damages under FELA. *Id.* at 428–30. However, independent of the emotional distress discussion, the Court went on to discuss whether Buckley could recover medical monitoring costs as a separate claim. *Id.* at 438–44. It is this analysis that is relevant to Alsteen's claim, not *Buckley*'s separate emotional distress analysis.

¶ 31. Third, Alsteen contends *Buckley* is distinguishable because its holding is limited to plaintiffs seeking medical monitoring damages as a lump sum instead of a court-supervised fund. However, judging by

the fourth amended complaint, Alsteen appears to seek lump sum damages. She has not committed to accepting a court-supervised fund. At most, her appellate brief contains the equivocal statement that "[d]epending on the nature and extent" of the medical monitoring award, a court-supervised fund "is likely to be . . . appropriate."

¶ 32. Moreover, the policy concerns identified in *Buckley* also apply in the context of a court-supervised medical monitoring fund. Specifically, the Court's concerns regarding the difficulty of assessing damages, unlimited and unpredictable liability, and secondary sources of payment apply regardless of the form the medical monitoring remedy takes.[5] Thus, even if Alsteen were seeking medical monitoring damages in the form of a court-supervised fund, *Buckley* would support dismissal of her claim.

## III. Other jurisdictions

¶ 33. Case law from other jurisdictions also supports dismissal of Alsteen's claim. In the fourteen years since *Buckley*, multiple courts have issued opinions rejecting medical monitoring claims absent actual, present injury. While rejection of asymptomatic plaintiffs' medical monitoring claims is not universal,[6] the following cases that declined to recognize such claims are instructive.

---

[5] Furthermore, allowing recovery in the form of a court-supervised fund raises a different set of concerns regarding the burdens inherent in administering such a fund. *See Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 698–99 & n.23 (Mich. 2005) (discussing difficulties associated with administering a court-supervised medical monitoring fund).

[6] *See Paz v. Brush Eng'd Materials, Inc.*, 949 So. 2d 1, 6 (Miss. 2007) (listing seven cases that have allowed medical monitoring claims absent present injury and seventeen cases that have refused to do so).

¶ 34. In *Henry*, 701 N.W.2d 684, the Michigan Supreme Court addressed a fact situation very similar to this case. There, plaintiffs alleged that the defendant negligently released dioxin into the flood plain where the plaintiffs lived and worked. *Id.* at 685–86. The plaintiffs did not allege that the dioxin exposure had caused any disease or injury; instead, they sought medical monitoring damages based on an increased risk of cancer and other diseases. *Id.* at 686. The court rejected the plaintiffs' claim, concluding they had not alleged a present physical injury—mere exposure to a toxic substance and increased risk of future harm did not constitute injuries under Michigan law. *Id.* at 688–89. The court also rejected the plaintiffs' request to create a new claim for medical monitoring absent present physical injury, stating:

> We would be unwise, to say the least, to alter the common law in the manner requested by plaintiffs when it is unclear what the consequences of such a decision may be and when we have strong suspicions, shared by our nation's highest court, that they may well be disastrous.

*Id.* at 697. Ultimately, the court deferred to the legislature to create a new claim, based on its ability to gather information from a broader array of potential stakeholders. *Id.* at 697–701.

¶ 35. The Alabama Supreme Court has also refused to eliminate the common law requirement of present injury in the context of medical monitoring claims. *See Hinton v. Monsanto Co.*, 813 So. 2d 827 (Ala. 2001). The court noted that Alabama law "has long required a manifest, present injury before a plaintiff may recover in tort." *Id.* at 829. After citing *Buckley*, the court stated:

> We do not intend to minimize the concerns that [asymptomatic plaintiffs] face and we do not deny that they have suffered a wrong at the hands of a negligent manufacturer, assuming the plaintiffs' allegations can be proven. However, we find it inappropriate . . . to stand Alabama tort law on its head in an attempt to alleviate these concerns about what *might* occur in the future. We believe that Alabama law, as it currently exists, must be applied to balance the delicate and competing policy considerations presented here. That law provides no redress for a plaintiff who has no present injury or illness.

*Id.* at 831–32. Similarly, in *Wood*, 82 S.W.3d at 859, the Kentucky Supreme Court considered whether to permit a medical monitoring claim in the absence of present injury and concluded, "Traditional tort law militates against recognition of such claims, and we are not prepared to step into the legislative role and mutate otherwise sound legal principles."

¶ 36. The Oregon and Nevada Supreme Courts have also rejected medical monitoring claims without present injury in lawsuits filed by cigarette smokers against tobacco companies. *See Lowe v. Philip Morris USA, Inc.*, 183 P.3d 181 (Or. 2008); *Badillo v. American Brands, Inc.*, 16 P.3d 435 (Nev. 2001). Each court refused to award medical monitoring damages based solely on the increased risk of future harm created by exposure to tobacco. *See Lowe*, 183 P.3d at 187 ("[W]e hold that negligent conduct that results only in a significantly increased risk of future injury that requires medical monitoring does not give rise to a claim for negligence."); *Badillo*, 16 P.3d at 441 ("[W]e are unpersuaded on the facts of this case to recognize a cause of action or remedy for medical monitoring for exposure to hazardous substances."). The Mississippi Supreme Court reached the same conclusion in a beryllium exposure

case, holding that present injury was required to state a claim for medical monitoring and that allegations of exposure and increased risk were insufficient to establish present injury. *Paz v. Brush Eng'd Materials, Inc.*, 949 So. 2d 1, 3, 5 (Miss. 2007).

¶ 37. As in Michigan, Alabama, Kentucky, Oregon, Nevada, and Mississipi, a plaintiff in Wisconsin must allege actual, present injury in order to state a tort claim. *See Tietsworth*, 270 Wis. 2d 146, ¶ 17. Like the courts in those other states, we recognize that allowing a medical monitoring claim absent present injury would constitute a marked alteration in the common law. *See Henry*, 701 N.W.2d at 697. We share the concerns expressed by those other courts that recognizing a medical monitoring claim for asymptomatic plaintiffs would "stand . . . tort law on its head," *see Hinton*, 813 So. 2d at 831–32, "depart from well-settled principles of tort law," *see Wood*, 82 S.W.3d at 856, and lead to uncertain results, *see Henry*, 701 N.W.2d at 697. Like the Kentucky Supreme Court, we therefore refuse to "step into the legislative role and mutate otherwise sound legal principles" by creating a new medical monitoring claim that does not require actual injury. *Wood*, 82 S.W.3d at 859. Consequently, we affirm dismissal of Alsteen's claim.

*By the Court.*—Order affirmed.